165 P.3d 667

**McDOWELL MOUNTAIN RANCH COMMUNITY ASSOCIATION, INC., an Arizona nonprofit corporation, Plaintiff/Appellant,**

v.

**James F. SIMONS, an unmarried man, Defendant/Appellee.**

No. 1 CA–CV 05–0296.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 10, 2007.

Carpenter Hazlewood, PLC By Scott B. Carpenter, Jeffrey B. Corben, J. Roger Wood, Tempe, Attorneys for Appellant.

James F. Simons, Scottsdale, In Propria Persona.

HALL, Judge.

¶ 1 McDowell Mountain Ranch Community Association, Inc. (the Association) appeals from the trial court's award of partial attorneys' fees in its favor. The question presented is whether the trial court abused its discretion when it awarded the Association only one-half of its requested fees despite a provision in the Association's Declaration of Covenants, Conditions, and Restrictions (CC & Rs) that entitled the Association to "all attorney's fees and costs incurred" in enforcing compliance with the CC & Rs. We conclude that the Association is entitled to receive all its attorneys' fees except those that are clearly excessive. Because the record does not support the trial court's fifty percent reduction in the Association's fee request, we vacate the trial court's award of partial attorneys' fees and remand for proceedings consistent with this Opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Association is an Arizona nonprofit corporation whose members are home owners within the McDowell Mountain Ranch community in Scottsdale, Arizona. The Association members are subject to the CC & Rs. James F. Simons (Simons) owns a home within the community and is therefore subject to the CC & Rs.

¶ 3 On January 20, 2004, the Association filed a Complaint against Simons for injunctive relief alleging that he commenced a construction project at the rear of his home without obtaining the requisite approval from the Association and requesting that the trial court issue an order to show cause returnable on February 5. The Association also requested attorneys' fees. Simons did not appear at the return hearing and the trial court scheduled a three-hour evidentiary hearing on the Association's application for a preliminary injunction for April 9, 2004. Three days before that hearing, the Association filed a motion to continue the evidentiary hearing stating that Simons had begun working toward completion of the construction in accordance with the CC & Rs and expressing the "hope[ ] that the construction will be completed and that the parties can resolve this dispute without further litigation before the continued hearing date." Accordingly, the trial court continued the hearing to June 11, 2004. At that hearing, at which Simons did not appear, the Association reported to the trial court that the property restoration had not been completed. Following a brief evidentiary hearing on the Association's motion for injunctive relief, the trial court issued a permanent injunction.

¶ 4 Because Simons did not answer the complaint, the Association filed an application for entry of default against him and, in connection therewith, filed an application for attorneys' fees and costs based on Article XV, Section 15.14 of the CC & Rs, which states:

[I]n the event the Association employs an attorney ... to enforce compliance with or recover damages for any violation or noncompliance with the [CC & Rs], the offending Owner or other person or entity *shall pay to the Association, upon demand, all attorney fees and court costs incurred by the Association,* whether or not suit is

filed[.] [1]

(Emphasis added.) In support of its application, the Association attached a detailed affidavit based on its attorneys' billing records and requested an award for its accrued attorneys' fees in the amount of $5,683.50.

¶ 5 On September 1, 2004, the Association filed a Request for Sanctions and For Order to Show Cause asserting that Simons had failed to comply with the permanent injunction. The trial court ordered Simons to appear on September 29, 2004 and explain "why the Court should not hold [him] in contempt for failing to abide by" the permanent injunction and "impose appropriate sanctions," including an award of attorneys' fees and costs to the Association. Simons attended the September 29 hearing, at which the Association's attorney informed the trial court that "it appears that [Simons] is attempting to come into compliance and that the Board will need to approve the condition of the property ... [and] the issue of attorneys' fees is also pending."

¶ 6 At a subsequent telephonic status conference regarding the contempt issue, in which Simons participated, the trial court scheduled the matter for a contempt hearing on March 4, 2005. On March 1, 2005, the Association filed a Request to Vacate Contempt Hearing and Notice of Lodging of Final Judgment because Simons "has made headway in resolving the remaining compliance issue" and therefore a hearing was no longer necessary.

¶ 7 On the same day, the Association filed a supplement to its application for attorneys' fees and costs, which alleged a total of $8,000.00 in attorneys' fees and $538.80 in costs. The Affidavit Regarding Attorneys' Fees contained the following avowal:

> [Attorney for McDowell] avows to this Court that the fees charged to the [Association] in this case comply with the applicable ethical standards for attorneys' fees,

constitute a fair and reasonable fee given the substance of the pleadings and the services rendered in this case, and have been paid or agreed to be paid by the client.[2]

The Association based its claim for attorneys' fees on Article XV, Section 15.14 of the CC & Rs.

¶ 8 On March 3, 2005, the Association filed a Judgment for an Award of Attorneys' Fees and Costs, requesting attorneys' fees in the amount of $8,000.00 and costs in the amount of $538.80. The trial court issued an order setting March 23, 2005 as the deadline for Simons to object to the proposed form of judgment and the application for attorneys' fees.

¶ 9 On March 24, 2005, the trial court received a letter from Simons objecting to the Association's request for attorneys' fees and costs. In the letter, Simons claimed that he did not appear for the evidentiary hearing because the Association's attorney informed him that the Association would "dismiss[ ] the hearing" based on his efforts to bring his home into compliance. Simons further claimed that the Association's attorneys' fees would have been substantially less if the Association did not "drag[ ] out" the proceedings. Accordingly, Simons requested the opportunity "to show the court in a hearing or trial the communications between myself and the [Association] to illustrate their failure to operate in good faith with me in resolving their complaint."

¶ 10 On March 28, 2005 the Association filed a Motion for Summary Disposition, requesting that the trial court grant its request for attorneys' fees and costs based on Simons' failure to object by the March 23 deadline. On April 5, 2005, the Association filed a Reply to Defendant's Objection to Plaintiff's Application for Attorneys' Fees

---

1. Even though Section 15.14 gave only the Association the right to receive fees, Simons would have been entitled to receive fees pursuant to A.R.S. § 12–341.01(A) (2003) had he prevailed. *See Pioneer Roofing Co. v. Mardian Constr. Co.,* 152 Ariz. 455, 471, 733 P.2d 652, 668 (App.1986) (holding that when a contract has a unilateral provision permitting one party to recover attorneys' fees under certain circumstances, the other party may recover its fees pursuant to § 12–341.01(A)).

2. The original Affidavit contained identical language.

and Costs.[3]  In the reply, the Association denied Simons' allegation regarding verbal communications between the parties and argued that the terms of the CC & Rs mandate that the Association be awarded its full attorneys' fees.  The Association also increased its request for attorneys' fees to $8,380.80. However, the Association did not supplement its application for attorneys' fees or its affidavit to identify the source of the additional fees.  Additionally, the Association did not amend the Judgment for an Award of Attorneys' Fees and Costs to reflect the increased amount it requested.

¶ 11  The trial court did not schedule a hearing as Simons requested.  Instead, the trial court granted the Association's request for attorneys' fees, but crossed out the "8" and handwrote the number "4," awarding McDowell $4,000.00 rather than $8,000.00 in attorneys' fees.

¶ 12  The Association timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B), (F) (2003).

## DISCUSSION

¶ 13  As its sole issue on appeal, the Association contends that the trial court erred by not awarding it the entire amount of its requested attorneys' fees pursuant to Article XV, Section 15.14 of the CC & Rs. Simons has not filed a responsive brief.  In cases when the appellant has raised a debatable issue, we may, in our discretion, treat the failure to file an answering brief as a confession of error.  *Nydam v. Crawford*, 181 Ariz. 101, 101, 887 P.2d 631, 631 (App.1994).  However, in order to clarify a rule of law, we do not do so here.  *Id.*

¶ 14  "CC & Rs constitute a contract between the subdivision's property owners as a whole and individual lot owners."  *Ahwa-*

*tukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634, 2 P.3d 1276, 1279 (App.2000).  "Unlike fees awarded under A.R.S. § 12–341.01(A), the court lacks discretion to refuse to award fees under [a] contractual provision."  *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (App.1994).  Indeed, it is well-settled in Arizona that "[c]ontracts for payment of attorneys' fees are enforced in accordance with the terms of the contract."  *Heritage Heights Home Owners Ass'n v. Esser*, 115 Ariz. 330, 333, 565 P.2d 207, 210 (App.1977) (quoting 25 C.J.S. Damages § 50(c)); *see also* A.R.S. § 12–341.01(A) (2003) ("This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees."); *Sweis v. Chatwin*, 120 Ariz. 249, 252, 585 P.2d 269, 272 (App.1978) ("[I]t is our opinion that [A.R.S. § 12–341.01] is inapplicable to the litigation here involved, inasmuch as the parties have provided in their contract the conditions under which attorney's fees may be recovered.").

¶ 15  In *Heritage Heights*, the association filed a complaint against a home owner to enforce a restriction in the subdivision deed. *Id.* at 332, 565 P.2d at 209.  The trial court denied the association's request for injunctive relief and its request for attorneys' fees.  *Id.* The association appealed from both of the trial court's rulings.  *Id.* We held that the trial court erred by not ordering the home owner to immediately comply with the deed restriction.  *Id.* at 333, 565 P.2d at 210.  In addition, we held that the home owner was contractually bound by the provision in the parties' contract that the "owner ... against whom the action is brought shall pay all attorneys' fees and costs thereby incurred by any such enforcing party prevailing in any such action."  *Id.* Accordingly, we stated: "[R]ecovery of all costs and attorneys' fees,

---

**3.**  Simons' objection was never formally filed. His response states, "Original filed with the Honorable Rebecca A. Albrecht's office," and is dated March 23, 2005, but the document is stamped "MAR 24 REC'D, Superior Court, Judge Rebecca A. Albrecht."  There is no accompanying stamp that indicates the response was filed with the Clerk of the Court.  However, the trial court faxed a copy to the Association's attorneys.  Because both the trial court and the Association received a copy of Simons' response and the Association replied to it, we treat it as part of the record before the trial court when it issued its ruling on the application.  *See Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 268 n. 2, 742 P.2d 277, 279 n. 2 (1987) (explaining that disregarding evidence that had not been formally filed, but which was before the trial court, "would be excessively technical and would exalt form over substance").

including those on appeal, must therefore be granted to the Association." *Id.* at 334, 565 P.2d at 211.[4]

■ ¶ 16 Notwithstanding the general rule that attorneys' fees are enforced in accordance with the terms of a contract, a contractual provision providing for an award of unreasonable attorneys' fees will not be enforced. *See Elson Dev. Co. v. Ariz. Sav. & Loan Ass'n,* 99 Ariz. 217, 407 P.2d 930 (1965). In *Elson,* the parties had entered into an addendum to a promissory note in which Elson agreed that if he did not perform in accordance with the supplemental agreement that judgment would be entered against him and that he would pay "a reasonable sum (not less than three (3%) per cent nor more than four (4%) per cent of the amount found by the court to be due and payable) ... as and for attorneys' fees." *Id.* at 219, 407 P.2d at 932. The Savings and Loan Association sued on the promissory note, obtaining summary judgment against Elson, and was awarded attorneys' fees of $88,000.00, slightly less than 4% of the judgment. *Id.* at 219–220, 407 P.2d at 931–32. On appeal, the supreme court vacated the summary judgment and then addressed Elson's claim that any award of attorneys' fees more than $1,000 was not reasonable and that the trial court was therefore not bound by the stipulation. *Id.* at 221, 407 P.2d at 933.

¶ 17 The supreme court observed that an agreement by the parties as to the amount of attorneys' fees is not contrary to public policy and is analogous to a contract for indemnity, *id.* at 222, 407 P.2d at 934, and held that a contractual fee provision stipulating to a certain amount or percentage of attorneys' fees "is binding only to the extent that it is reasonable; however, where the services have been rendered, and the amount stipulated is not obviously excessive, the stipulation as to the amount should govern." *Id.* at 223, 407 P.2d at 934.

¶ 18 Section 15.14 tracks more closely the contractual language at issue in *Heritage*

*Heights* than the percentage of the amount due on a promissory note interpreted in *Elson.* Although we agree with the Association that *Heritage Heights* supports its argument that Simons is contractually obligated to pay the full amount of the Association's attorneys' fees, *Elson* imposes a caveat that such an agreement should not be enforced when the amount requested is "obviously excessive."

¶ 19 Our application of *Elson* to the circumstances of this case is supported by cases in other jurisdictions. *See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2nd Cir.1987) (holding that "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable"); *Storm Assoc., Inc. v. Baumgold,* 186 Conn. 237, 246, 440 A.2d 306 (1982) (holding the reasonableness of attorneys' fees request pursuant to a contractual provision will be "presumed" absent evidence of its unreasonableness); *Dunn v. Sentry Ins.,* 462 So.2d 107, 108–09 (Fla.App.1985) (holding that a court should uphold a contractual attorneys' fees provision unless it is facially unreasonable or found excessive); *Cent. Progressive Bank v. Bradley,* 502 So.2d 1017, 1017 (La.1987) (holding that a court may inquire into the reasonableness of contractual agreements for attorneys' fees when the requested fees are manifestly excessive); *Conway v. Am. Nat'l Bank of Danville,* 146 Va. 357, 364–65, 131 S.E. 803 (1926) (holding that a fee stipulated by contract is prima facie reasonable and placing the burden on the challenging party to prove the amount is excessive or unreasonable).

■ ¶ 20 In this instance, the Association submitted two fee applications consistent with the requirements set forth in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 187–89, 673 P.2d 927, 931–33 (App.1983), thereby establishing its prima facie entitle-

---

4. Based on this clear holding, we respectfully disagree with the dissent's apparent assertion, *infra* at ¶ 27, that *Heritage Heights* did not require the contract to be enforced according to its terms but only entitled the association to reasonable attorneys' fees as determined by the trial court.

ment to fees in the amount requested. Assuming that the fees requested were facially reasonable, Simons then had the burden to show that they were clearly excessive. If such a showing is not made, then the Association is entitled to receive its full attorneys' fees.

¶ 21 In his letter to the court, Simons requested a hearing to allow him to present evidence that the Association's requested attorneys' fees were excessive. Instead, the trial court, without explanation, simply cut the requested attorneys' fees in half. This action by the trial court suggests it believed that the Association bore the burden of establishing the reasonableness of the fees it incurred and that the trial court had broad authority to reduce the contractually mandated fee award even in the absence of any showing that the fees were clearly excessive. Such a belief would have been correct if the Association, and not Simons, had the burden of demonstrating what was reasonable under the circumstances of the case. *See, e.g., Haldiman v. Gosnell Dev. Corp.*, 155 Ariz. 585, 592, 748 P.2d 1209, 1216 (App.1987) (explaining the trial court has broad discretion in determining the reasonable amount of attorneys' fees pursuant to § 12–341.01); *see also Exodyne Prop., Inc. v. City of Phoenix*, 165 Ariz. 373, 380, 798 P.2d 1382, 1389 (App.1990) (explaining that although a trial court is required to award reasonable attorneys' fees to the prevailing party pursuant to A.R.S. § 12–2030 (2003), the trial court nonetheless has discretion to determine the reasonable amount); *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 574, 880 P.2d 1109, 1120 (App.1994) (holding a trial court has discretion to determine the reasonable amount of attorneys' fees to award when awarding fees pursuant to a contractual provision providing for reasonable attorneys' fees). However, as we have explained, the trial court's discretion is more narrowly circumscribed when the parties contractually agree that the prevailing party shall be awarded all its attorneys' fees. In this instance, the record does not support a determination that 50% of the fees incurred by the Association were clearly excessive.[5]

¶ 22 On remand, the trial court may conduct a hearing to consider any evidence offered by Simons, and then enter an award to the Association of all of its attorneys' fees that were properly incurred in this matter except as to those fees the court expressly finds are clearly excessive. *See Elson*, 99 Ariz. at 223, 407 P.2d at 934; *Heritage Heights*, 115 Ariz. at 334, 565 P.2d at 211; *see also* Ariz. R. Civ. P. 54(g) ("If the motion is contested, opposing parties may respond to the motion, and a hearing may be granted in the discretion of the court.").

¶ 23 Finally, the Association requests that it be awarded all of its attorneys' fees and costs incurred on appeal. Pursuant to the terms of the CC & Rs and A.R.S. § 12–342 (2003), we award the Association its attorneys' fees and costs incurred on appeal upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 24 For the foregoing reasons, we vacate the trial court's award of partial attorneys'

---

5. Although Simons did not file an answer to the complaint, this was not a simple "default" case. For example, the Association's attorneys spent several hours preparing for a scheduled evidentiary hearing on its request for a permanent injunction. Although Simons did not appear at the hearing, the Association had to be prepared for the possibility that Simons might appear and contest the issuance of a permanent injunction. Indeed, he did appear in later proceedings regarding contempt and, notwithstanding his apparent default, sent a written objection to the trial court on the issue of attorneys' fees. As the prevailing party, the Association is "entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit" of a successful outcome to the lawsuit. *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1313 (9th Cir.1982), *cited with approval by China Doll*, 138 Ariz. at 188, 673 P.2d at 932.

We agree with the dissent, *infra* at ¶ 26, that one of the affidavits submitted by the Association included fees charged for a violation of the CC & Rs not included in its complaint. Accordingly, the charge of $200.00 for preparing an enforcement demand letter regarding Simons' alleged "failure to properly park/store recreational vehicle" should be subtracted from the fee request.

fees and remand for proceedings consistent with this Opinion.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge.

OROZCO, Judge, dissenting.

¶ 25 I respectfully dissent from the majority opinion and their reliance on *Elson* and *Heritage Heights* to support their holding that "the trial court may conduct a hearing to consider any evidence offered by Simons, then enter an award to the Association of all of its attorneys' fees that were properly incurred in this matter except as to those fees the court expressly finds are clearly excessive." *Supra* ¶ 22.

¶ 26 A brief review of the affidavits for attorneys' fees submitted by the Association indicates that the requested fees were "clearly excessive." For example, some of the fees incurred were for a violation of the CC & R that was not alleged in the complaint; and Simons, who was pro per, essentially raised no legal or factual defenses at any time during the case. The trial court knew what this case was about, what the issues were, reviewed the affidavits and was in the best position to determine whether $8000 in attorneys' fees was reasonable or "clearly excessive."

¶ 27 In Heritage Heights, the deed restriction contained the following provision:

In the event . . . the Association[ ] employs an attorney, or attorneys to . . . enforce compliance with or specific performance of the terms and conditions of this Declaration, the owner, owners and parties against whom the action is brought *shall pay all attorneys' fees and costs* thereby incurred by any such enforcing party prevailing in any such action.

115 Ariz. at 333, 565 P.2d at 210. (Emphasis added.) The majority correctly points out this court's holding in *Heritage Heights* that the home owner "became contractually bound" to the deed's provision when it accepted the deed and the contract provision trumped the decision of the trial court to award each party its own attorneys' fees. *Id.* at 333–34, 565 P.2d at 210–11. Furthermore, the trial court "was obliged by the contract to assess attorneys' fees and costs in favor of the enforcing party." *Id.* at 334, 565 P.2d at 211. However, this court remanded the matter to the trial court for "the *determination and assessment* of costs and attorneys' fees, including attorneys' fees on appeal," but did not go so far as to award "all attorneys' fees and costs." *Id.* (emphasis added.) In my view, Heritage Heights only addressed the issue of whether the contract mandated that the prevailing party would be entitled to their attorneys' fees. The court did not award all attorneys' fees; rather it left for the trial court to determine and assess what was reasonable. That is what the trial court did here and why I do not believe the trial court abused its discretion.

¶ 28 I also read *Elson* differently and do not believe the CC & R in this case entitles the Association to all of their attorneys' fees and costs without allowing the court to make a finding of reasonableness. In *Elson*, the supreme court held "a provision in regard to a definite amount of attorney's fees . . . is binding only to the extent that it is reasonable." 99 Ariz. at 223, 407 P.2d at 934. I interpret this holding as saying that in any case, the trial court not only should, but *must* examine the fees application and determine and assess what is reasonable. I believe the trial court in this case already determined that the fees were obviously or clearly excessive, otherwise it would not have cut them in half.

¶ 29 Implicit in any contractual provision for attorneys' fees is a standard of reasonableness, even if the contract provides for "all" attorneys' fees. This position is supported by the Arizona Rules of Professional Conduct, which prohibits "unreasonable fee[s]." Ariz. R. Sup.Ct. 42, ER 1.5. I also find additional support in cases from other jurisdictions. *See, e.g., Crest Plumbing & Heating Co. v. DiLoreto,* 12 Conn.App. 468, 531 A.2d 177, 183 (1987) (holding "[w]e construe the term 'attorney's fees' as an award for '*reasonable* attorney's fees' in this case because the term '*reasonable*' is implied by law even when it is absent in the contractual provision"); *Rauch v. McCall,* 134 Md.App. 624, 761 A.2d 76, 82–85 (Ct.Spec.App.2000) (finding "implicit in the Agreement" to award

the non-breaching party all of its attorneys' fees, "that the fees awarded ... were to be 'reasonable' "); *Kurtz v. Kurtz,* 158 S.W.3d 12, 19 (Tex.App.2004) (holding "reasonableness is an implied term in the ... attorney's fees provision and constru[ing] the term 'attorney's fees and costs' to unambiguously require that [appellee] pay only reasonable and necessary attorney's fees and costs").

¶ 30 I also respectfully disagree with the majority's position that

the Association submitted two fee applications consistent with the requirements set forth in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 187–89, 673 P.2d 927, 931–33 (App.1983), thereby establishing its prima facie entitlement to fees in the amount requested. Assuming that the fees requested were facially reasonable, Simons then had the burden to show that they were clearly excessive. If such a showing is not made, then the Association is entitled to receive its full attorneys' fees.

Supra ¶ 20.

¶ 31 We review an award "of attorneys' fees for an abuse of discretion." *Charles I. Friedman, P.C. v. Microsoft,* 213 Ariz. 344, 350, 141 P.3d 824, 830 (App.2006) (citation omitted). Based on the majority's position, a logical conclusion would be that if a request for fees was made pursuant to a *China Doll* application, the trial court would be required to award the fees when the party opposing the fees did not object. Thus, in this case, if Simon had not objected, the trial court would be required to award the Association its fees for work that had nothing to do with this litigation. *Supra* ¶ 29. However, this result would violate our professional rules of conduct as it would award improper fees. Furthermore, it would obligate a trial court to award all fees without the ability to carefully review and scrutinize a fee application to make a proper award.

¶ 32 By awarding the Association one half of the fees it requested, the trial court implicitly found the request was unreasonable or clearly excessive. Based on the record before us, I cannot say the trial court abused its discretion in making this award.

¶ 33 For the reasons stated above, I would affirm the award of attorneys' fees and costs by the trial court.